UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

D. N. M., a minor, by his mother, Aletrus
M. Brame,

      Plaintiff,

    vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

CAUSE NO. 1:13-cv-884-RLY-DKL

## REPORT AND RECOMMENDATION

Plaintiff D. N. M. ("D."), a minor, filed an application for supplemental-security-income benefits, alleging that he became disabled on June 24, 2010. The Commissioner finally denied his application and D. filed the present suit for judicial review of that decision. The assigned district judge referred this Cause to this magistrate judge for submission of a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons explained herein, this magistrate judge recommends that the Commissioner's decision be affirmed.

### Standards of review and disability

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a

preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

A child under the age of eighteen is eligible for SSI benefits if he has a medically determinable mental or physical impairment that causes marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). A physical or mental impairment is one that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *Id.* § 1382c(a)(3)(D). In

determining whether impairments are disabling, the combined effect of all of a child's impairments must be considered, without regard to whether any single impairment alone is of disabling severity. 42 U.S.C. § 1382c(a)(3)(G).

By regulation, the Social Security Administration ("SSA") has determined that satisfaction of one of the Listings of Impairments for minors, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part B, fulfills the statutory requirement that a child's impairment or combination of impairments "results in marked and severe functional limitations." The Listing of Impairments, Part B, is a compilation of medical conditions, divided into fourteen major body systems, that the SSA has pre-determined are disabling in children. 20 C.F.R. § 416.925. In general, each listed condition is defined by two sets of criteria: first, diagnostic findings that substantiate the existence of a listed condition and, second, sets of related functional limitations that substantiate the condition's disabling severity. *Id.* A child's impairment or group of impairments can satisfy a listed condition in three ways: by meeting all of the listed criteria for the condition, 20 C.F.R. § 416.925(c)(3); by medically equaling the criteria, *id.* § 416.925(c)(5); or by functionally equaling the criteria, *id.* § 416.926a(a).

A child's impairment *meets* a listed condition only when it satisfies all of the criteria of the listing. 20 C.F.R. § 416.925(c)(3) and (d). A child's impairment medically equals a listed condition when it is at least equal in severity and duration to the criteria of a listed condition. Id. § 416.926(a). Medical equivalence will be found in one of three ways: (1)

3

the child's impairment, though listed, is lacking one or more of the medical or severity criteria, but other findings related to the impairment are of at least equal medical significance to the listed criteria, *id.* § 416.926(b)(1); (2) the child's impairment is not a listed condition but the impairment's medical and severity findings are of at least equal medical significance to a closely analogous listed condition, *id.* § 416.926(b)(2); or (3) the child has a combination of impairments, no one of which equals a listed condition, but the combined impairments' medical and severity findings are of at least equal medical significance to a listed condition, *id.* § 416.926(b)(3).

A child's impairment or combination of impairments will *functionally equal* a listed condition when it is of listing-level severity, which the SSA has defined to mean that the child's impairments result in a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning are (1) acquiring and using information, (2) attending to and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for self, and (6) health and physical well-being, *id.* § 416.926a(b)(1). The SSA has defined constituent activities within each domain and their normal levels of performance at different age groups. *Id.* § 416.926a(g)-(l). In general, a "marked" limitation exists when a child's impairment or combination of impairments "interferes seriously with [her] ability to independently initiate, sustain, or complete activities" within a particular domain. It is a limitation that is "more than moderate" but "less than

4

extreme,@ and is the level of functioning that is expected with scores that are more than two, but less than three, standard deviations below the mean on standardized tests. *Id.* ' 416.926a(e)(2). An Aextreme@ limitation is one that interferes Avery seriously@ with a child=s ability to perform activities within a domain. It is Amore than marked,@ and is the level of functioning that is expected with scores at least three standard deviations below the mean on standardized testing. *Id.* ' 416.926a(e)(3).

The SSA has prescribed a three-step sequential process for evaluating child disability claims. 20 C.F.R. ' 416.924. If disability eligibility can be determined at any step in the sequence, an application will not be reviewed further. *Id.* ' 416.924(a). At the first step, if the child is engaged in substantial gainful activity, *i.e.*, is earning money, then he is not disabled. *Id.* ' 417.924(b). At the second step, if the child=s impairments, or combination of impairments, are not severe, then he is not disabled. A severe impairment or combination of impairments is one that causes Amore than minimal functional limitations.@ *Id.* ' 416.924(c). At the third step, the child=s impairments, either singly or in combination, must satisfy the criteria of at least one of the conditions included in Part B of the Listings of Impairments. *Id.* ' 416.924(d). The applicant bears the burden of proof at each step of the process. If a child=s impairments pass all three steps, and satisfies the duration requirement, then he is determined to be disabled.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a disability examiner and a

5

physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g).

## Factual and procedural background

D. was nine years old at the time of his application and ten years old at the time of the hearing.

D.'s application was denied on initial and reconsideration administrative reviews. He requested and received a hearing before an ALJ in November 2011. He and his mother testified and he was represented by current counsel. In December 2011, the ALJ issued her decision denying the application and D. sought review by the Commissioner's Appeals Council. The Council denied his request for review in April 2013, which rendered the ALJ's decision the one that is reviewed here.

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, et seq.). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

At step one of the sequential evaluation process, the ALJ found that D. had not engaged in substantial gainful activity since his date of application. At step two, the ALJ found that D. has the severe impairments of asthma, attention deficit hyperactivity disorder ("ADHD"), and depressive disorder. At step three, she found that D. neither met nor medically equaled any of the conditions in the listing of impairments. She examined listings 103.3 (asthma), 112.04 (mood disorders), and 112.11 (ADHD). She also found that D. did not functionally equal the severity of the listing of impairments. She found that he was "less than marked" in all six domains of functioning. Thus, the ALJ found that D. was not disabled.

**Discussion**

D. asserts several errors in the ALJ's decision.

**1. Failure to evaluate listing 112.08.** D. argues that the ALJ erred by failing to consider whether his oppositional defiant disorder satisfied listing 112.08. D. correctly describes the condition as "possible ODD", (*Plaintiff's Brief in Support of Complaint* [doc. 24] ("*Brief*") at 15): it was described as only a rule-out diagnosis ("R/O ODD") in Gallahue Mental Health's initial evaluation and plan, (R. 201), and no acceptable medical source, of all that have examined and tested D., has diagnosed him with a personality disorder of oppositional defiant disorder. Thus, there was no apparent reason for the ALJ to evaluate listing 112.08. But more importantly, D. not only did not assert or argue to the ALJ that he satisfied listing 112.08 but, by omitting it from his pre-hearing brief's

7

identification of the three listings that he claimed he did satisfy (and which the ALJ did evaluate), (R. 186-93), he effectively represented that the listing was not applicable. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (a claimant represented by counsel is presumed to be making his best case for benefits). It was his burden to assert and prove satisfaction of the listings. The ALJ was entitled to assume that D. was making his best case for benefits and, if he did not assert, argue, or prove that he satisfied listing 112.08, then the presumption is that an evaluation of that listing would be fruitless. Therefore, the ALJ did not err by not evaluating listing 112.08.

**2. Litany of ignored, misstated, or rejected evidence.** D. argues that the ALJ ignored, misstated, or rejected without explanation "all of the evidence which proved the claimant's total disability," (*Brief* at 19-20), and his counsel provides the now-standard litany of various items or parts of items of evidence that he contends the ALJ ignored, selectively considered, or arbitrarily rejected. As counsel well knows by now, an ALJ is not required to mention or address every item of evidence or every minute component of every item of evidence in the record. A cursory review of the ALJ's decision reveals that she did not ignore or fail to discuss "all of the evidence" contrary to her disability determination. D. does not attempt to show why each item of evidence in his litany, in the context of the evidence already in the record and the evidence addressed by the ALJ, required specific address by the ALJ. The Court will not undertake that task for him. D. has waived any argument that might have been made on this issue. Counsel would do

8

well to shift the time and effort that he devotes to copying the record into constructing arguments that serve claimants.

   3. **GAF scores.**  D. argues that "[t]he ALJ's refusal to accept the GAFs of 50 and below (indicating total disability), as evidence of disability was contrary to Seventh Circuit case which accept GAF assessment as evidence of disability." (*Brief* at 21.) There is no indication in the ALJ's decision that she "refused to accept" GAF scores as qualified evidence.  In fact, she identified two of the GAF scores in the record.  (R. 15-16.)  She made her disability determination on the basis of the record evidence as a whole, instead of relying solely on GAF scores, and D. cites no authority that the Commissioner must give dispositive, or even greater, weight to GAF scores over other probative evidence of disability.  Because D. fails to make an argument why, in the context of the other evidence of record, the GAF scores unmentioned by the ALJ required specific discussion and why she was required give them greater weight than other record evidence, he fails to show error.

   4. **Failure to call a medical advisor.**  D. argues that the ALJ erred by failing to call a medical advisor to testify on the issue of whether his impairments medically equaled the listings.  Implicitly recognizing that state-agency physicians can supply the required medical opinions on the subject of medical equivalence, D. argues that their opinions in this case do not qualify because they were rendered before certain evidence was introduced into the record:  the Gallahue mental-health evaluations on Feb. 22, 2011, (R.

312), March 22, 2011, (R. 316), and May 13, 2011, (R. 328), and the November 4, 2011 functional evaluation by Dr. Gates, his treating pediatrician, (R. 330, 339). His argument is: "Presumably if they had reviewed all of the evidence they would have reasonably determined the claimant was totally disabled." (*Brief* at 23.) That is certainly not the Court's presumption. While it might be D.'s presumption, it was definitely his *burden* to show that the nature of these items of evidence, compared to the other evidence the state-agency physicians reviewed, required the ALJ to obtain a supplemental medical opinion. D.'s counsel made this specific request for a supplemental equivalence medical opinion at the hearing and the ALJ included in her decision her rationale for denying his request. (R. 9.) Especially in light of this specific discussion in the ALJ's decision, it was incumbent on D. not to simply cite later-submitted evidence and expect the Court to examine it and the rest of the record on its own to determine whether the ALJ's denial of his request was erroneous. Thus, D. has forfeited this argument.

Additionally and alternatively, the Court agrees with the Commissioner's analysis showing that, based on the nature of D.'s cited evidence, the ALJ did not err in denying D.'s request for supplemental equivalence opinion.

**4. Credibility.** D. makes two arguments against the ALJ's credibility determination. First, he argues that her "arbitrary rejection of the assessed GAFs of 50 and below and the evidence of the claimant's Marked impairments in two functional domains and the other evidence of disability detailed above, which fully corroborated

the claimant's allegations of total disability, was contrary to her duty to consider Factor 2 of [S.S.R. 96-7p]: . . . The location, duration, frequency, and intensity of the individual's pain or other symptoms . . ." (*Brief* at 25.) This merely repeats D.'s "arbitrary rejection" and GAF-scores arguments that have been addressed above.

Second, D. argues that the ALJ committed legal error by stating her credibility conclusion first and then evaluating the evidence and articulating her rationale afterward. While this "boilerplate" or "backwards" approach has been criticized in some decisions, the Court of Appeals for the Seventh Circuit has held that this composition style is innocuous if the ALJ provides an explanation for her credibility determination. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). The ALJ did so, it is not perfunctory, and D. does not argue otherwise.

D. has not shown that the ALJ's credibility determination was erroneous.

## Conclusion

Because Plaintiff has not shown error in the ALJ's decision, this magistrate judge **RECOMMENDS** that the Commissioner's decision denying Plaintiff's application for benefits be **DENIED**.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed.

R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** 08/08/2014

*[signature]*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.